# UNITED STATES DISTRICT COURT

_____ DISTRICT OF MASSACHUSETTS _____

UNITED STATES OF AMERICA

v.

RAFAEL GONZALEZ
JUAN JOSE RODRIGUEZ
(Name of Defendant(s))

**CRIMINAL COMPLAINT**

Case Number: 05-M-0412-RBC

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about **February 25, 2005** in **Suffolk** County and elsewhere in the District of **Massachusetts**, defendant did, (Track Statutory Language of Offense)

**Knowingly, intentionally and unlawfully import into the United States from a place outside thereof, namely Guatemala, a quantity of cocaine, a Schedule II controlled substance,**

in violation of Title **21** United States Code, Section **952 & 960**.

I further state that I am a(n) **U.S. ICE Special Agent G. Ryan Arnold**
Official Title

and that this complaint is based on the following facts:

**See Affidavit of Special Agent G. Ryan Arnold.**

**Continued on the attached sheet and made a part hereof:** [x] Yes  [ ] No

_____
Signature of Complainant
G. Ryan Arnold
Immigration and Customs Enforcement

Sworn to before me and subscribed in my presence,

February 25, 2005 at 4:11 pm  at  Boston, Massachusetts
Date                                     City and State

ROBERT B. COLLINGS
United States Magistrate Judge
Name and Title of Judicial Officer      Signature of Judicial Officer

**AFFIDAVIT**

I, G. RYAN ARNOLD, being duly sworn, hereby depose and state as follows:

1. I am a Special Agent with the Bureau of Immigration and Customs Enforcement (ICE). I have been employed as a Special Agent with ICE and its predecessor agency the Immigration and Naturalization Service Customs (INS) since 2002. Prior to that, I served as a Border Patrol Agent in Zapata, Texas from 1998 to 2002. Since joining federal law enforcement, I have been involved in multiple drug repated investigations involving the illegal smuggling of cocaine, heroin, and other controlled substances. I have also received training at the Federal Law Enforcement Training Center in all aspects of drug smuggling, including the structure, organization, and operation of international drug smuggling groups, the techniques used by such persons to finance and import drugs, and the identification of documents and other records commonly generated by such operations.

2. I submit this affidavit in support of a criminal complaint charging **OMAR GONZALEZ** (DOB: 02/14/86), **RAFAEL RODRIGUE** (DOB: 04/12/70), and **JUAN JOSE RODRIGUEZ** (DOB 05/20/74) with knowingly, intentionally and unlawfully importing cocaine, a Class II controlled substance, into the United States from a

1

place outside thereof, in violation of 21 U.S.C. §952 and §960.

3. The information contained in this Affidavit is based upon facts and circumstances learned by me personally and information related to me by other law enforcement officers involved in the investigation. This affidavit does not set forth all the facts developed during the course of this investigation. Rather, it sets forth only those facts that are necessary and sufficient to establish probable cause to believe that **OMAR GONZALEZ, RAFAEL GONZALEZ, and JUAN JOSE RODRIGUEZ** have committed the crime set forth in the accompanying Criminal Complaint.

4. On Friday, February 25, 2005, at approximately 4:00 a.m., Taca Airlines Flight 586 landed at Logan International Airport ("Logan") in Boston. Flight 586 had originated in Guatemala City, Guatemala, but made a stop in San Salvador, El Salvador. The flight was scheduled to arrive in Boston at approximately 10:30 p.m. on Thursday, February 24, 2005, but due to unfavorable weather conditions it was diverted to Dulles International Airport in Washington D.C. for a brief layover. **OMAR GONZALEZ** was a passenger on that flight.

5. During a routine inspection, Customs agents in Boston x-rayed **OMAR GONZALEZ**'s luggage, which contained packaged hammocks, and observed anomalies within the poles to the

hammocks. Agents then removed the wooden dowels in the hammock poles and discovered packages of a white powdery substance that was consistent in appearance with cocaine. A field test administered on the substance indicated positive to the presence of cocaine. Because of the tightly packed manner in which the cocaine was hidden within the hammock poles, agents were unable to remove the cocaine. Consequently, an exact gross weight of the cocaine is impossible to determine at this time without destroying the hammock poles themselves. Nevertheless, the total weight of the hammocks, including the poles, is approximately 31 pounds. Based upon my direct observations of the packaged cocaine within the poles, it is my opinion that the combined weight of the cocaine exceeds 500 grams.

6. Prior to screening the luggage, U.S. Customs inspectors examined the flight itineraries for the passengers on flight 586. The itinerary for **GONZALEZ** showed a slight irregularity in that he traveled from Los Angeles, California, to Guatemala for a one-night stay, and then on to Boston, Massachusetts.

7. At Logan, **OMAR GONZALEZ** de-boarded the plane along with the other passengers. After disembarking, **GONZALEZ** presented his passport to the U.S. Immigration inspectors for entry into the United States. From there, **GONZALEZ** proceeded to claim his luggage. Prior to claiming his luggage, **GONZALEZ** was asked a

series of routine "ownership" questions concerning his luggage. Inspectors asked **GONZALEZ** if the luggage (which included the hammocks) belonged to him and if he was aware of its contents. **GONZALEZ** responded affirmatively to the questions. **GONZALEZ** then agreed to speak to inspectors in a secondary interview area.

8.  In the separate interview area, **GONZALEZ** acknowledged and waived his <u>Miranda</u> rights. He informed ICE agents, including myself, that he had received the hammocks from an individual known to him only as "Carlos" LNU, who is known to **GONZALEZ** to be a Guatemalan cocaine smuggler. **GONZALEZ** stated that he was contacted in Los Angeles and instructed to fly down to Guatemala and meet with "Carlos." When he arrived in Guatemala on February 23, 2005, **GONZALEZ** met with Carlos, who appeared excited. Carlos informed **GONZALEZ** that plans to make a delivery to Boston had to be advanced and that **GONZALEZ** needed to take a flight to Boston immediately (on February 24, 2005). Carlos instructed **GONZALEZ** to call him as soon as **GONZALEZ** arrived in Boston and checked into a hotel.

9.  **GONZALEZ** also informed ICE agents, including myself, that on at least one other occasion he had made a cocaine delivery for Carlos in Guatemala within the past month.

**GONZALEZ** stated that was paid $500.00 for the shipment. **GONZALEZ** also stated that approximately two weeks ago he had flown up to Boston, Massachusetts, to deliver stone statues containing some unknown substance. Upon checking into a hotel in the Boston area, he called an Hispanic male who later arrived a the hotel in a white Chevrolet Impala. **GONZALEZ** placed the statues in the trunk of that Impala and received a payment of approximately $2,000.00 for his services.

10. After speaking to agents at Logan, **GONZALEZ** agreed to arrange for the delivery of the hammock packages containing cocaine to his contact in Boston. Agents then secured rooms at the Holiday Inn in East Boston. During the time that **GONZALEZ** agreed to speak to agents and the renting of the hotel room, **GONZALEZ** received multiple telephone calls from an individual who later identified himself only as "Chato" LNU in Guatemala. At approximately 10:46 a.m., **GONZALEZ** received a telephone call from Chato who requested information related to **GONZALEZ**'s location in order to make arrangements with his associate in Boston to retrieve the hammocks.

11. At approximately 12:25 p.m. on February 25, 2005, two Hispanic males arrived at the Holiday Inn in East Boston driving a 1994 Honda Accord, bearing Massachusetts registration 1670WX. The passenger, **RAFAEL GONZALEZ**, exited the vehicle and proceeded

5

to the hotel room rented by agents. There, he met with **GONZALEZ** and engaged in conversation. **RAFAEL GONZALEZ** handed **OMAR GONZALEZ** $2,500.00, which represented payment for **OMAR GONZALEZ's** services. During the conversation, **RAFAEL GONZALEZ** asked **OMAR GONZALEZ** if the packages containing the hammocks had been x-rayed at the airport. **OMAR GONZALEZ** responded affirmatively, but stated that he encountered no problems. As **RAFAEL GONZALEZ** left the hotel room with the hammocks in-hand, agents approached and arrested him. **RAFAEL GONZALEZ** was advised of his Miranda rights and agreed to speak to agents. He informed ICE Agent Gus DaCunha, who speaks Spanish, and other agents that the Honda did not belong to him. **RAFAEL GONZALEZ** also told agents that "Juan" (the driver) instructed him to go to a hotel room and retrieve a bag containing "gifts". **RAFAEL GONZALEZ** also informed agents that he was roommates with "Juan" and pays him rent in the amount of $300.00 per month.

12. Contemporaneous with the arrest of **RAFAEL GONZALEZ**, ICE agents approached the driver of the Honda, **JUAN JOSE RODRIGUEZ**, and spoke to him. ICE Agent Brenda Nevano, who speaks fluent Spanish, and another agent informed **RODRIGUEZ** of his Miranda rights. **RODRIGUEZ** acknowledged that he understood his rights and agreed to speak to agents. **RODRIGUEZ** initially told Agent

6

Nevano that he was transporting "Rafael" to Boston to pick up a relative who had arrived from Guatemala. Later, **RODRIGUEZ** said that he was promised $300.00 by **RAFAEL GONZALEZ** to drive **GONZALEZ** to a hotel in Boston to pick up an individual who was arriving from Guatemala with "some items." A search of **RODRIGUEZ**'s vehicle uncovered a hidden compartment in the rear hatchback area containing a small amount of a brown powdery substance consistent in appearance with heroin. Three cellular telephones were also located: two in the Honda and one on **RODRIQUEZ**. Two of the cellular telephones in the Honda received several incoming calls from a telephone exchange (502) originating in Guatemala.

13. Based on the information contained in this Affidavit, all of which is true and accurate to the best of my knowledge, information and belief, I believe that there is probable cause to believe that **OMAR GONZALEZ, RAFAEL GONZALEZ, and JUAN JOSE**

**RODRIGUEZ** have violated 21 U.S.C. §§952 and 960.

_____
G. RYAN ARNOLD
Special Agent
Bureau of Immigration and Customs Enforcement


Sworn to and subscribed before me the 25th day of February, 2005.

_____
**ROBERT B. COLLINGS**
United States Magistrate Judge

%JS 45 (5/97) - (Revised USAO MA 3/25/02)

| **Criminal Case Cover Sheet** | **U.S. District Court - District of Massachusetts** |

**Place of Offense:**       Category No. **II**       Investigating Agency **ICE**

**City** _____       Related Case Information:

**County** **Suffolk**       Superseding Ind./ Inf. _____   Case No. _____
                             Same _____   New   **x**
                             Magistrate Judge Case Number _____
                             Search Warrant Case _____
                             R 20/R 40 from District of _____

**Defendant Information:**

**Defendant**   **Rafael Gonzalez**       Juvenile  ☐ Yes  **☒ No**

**Alias Name**   **"Flavio, Herrate Alverez"**

**Address**   **43 Frederick Street, Framingham, MA**

**Birth**  **4/12/70**   **SS#:** _____   **Sex:** **M**   **Race:** **Hispanic**   **Nationality** **Guatamalan**

**Defense Counsel if known:** _____       **Address:** _____

**Bar Number:** _____

**U.S. Attorney Information:**

**AUSA**   **William Bloomer**       **Bar Number if applicable** _____

**Interpreter:**  **☒ Yes**  ☐ No       **List language and/or dialect:** _____

**Matter to be SEALED:**  ☐ Yes  **☒ No**

☐ Warrant Requested       ☐ Regular Process       **☒ In Custody**

**Location Status:**

**Arrest Date:**  **2/25/05**

**☒** Already in Federal Custody as   **2/25/05**   in _____.
☐ Already in State Custody _____       ☐ Serving Sentence       ☐ Awaiting Trial
☐ On Pretrial Release:  Ordered by _____ on _____

**Charging Document:**   **☒ Complaint**   ☐ Information   ☐ Indictment

**Total # of Counts:**   ☐ Petty ___   ☐ Misdemeanor ___   **☒ Felony  1**

                Continue on Page 2 for Entry of U.S.C. Citations

**☒**   I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

**Date:** February 25, 2005       **Signature of AUSA:**

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 or Reverse

**District Court Case Number** (To be filled in by deputy  _____

**Name of Defendant**   Rafael Gonzalez  _____

## U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1  21 USC §952 & 960 | Illegal importation of Cocaine | |
| Set 2 | | |
| Set 3 | | |
| Set 4 | | |
| Set 5 | | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set | | |
| Set | | |
| Set | | |
| Set | | |
| Set | | |
| Set | | |

**ADDITIONAL INFORMATION:**  _____

_____

omar gonzalez js45.wpd - 3/13/02

**Criminal Case Cover Sheet**                                   U.S. District Court - District of Massachusetts

**Place of Offense:**                Category No. **II**         Investigating Agency **ICE**

**City** _____         Related Case Information:

**County**  **Suffolk**               Superseding Ind./ Inf. _____        Case No. _____
                                      Same _____   New      **x**
                                      Magistrate Judge Case Number _____
                                      Search Warrant Case _____
                                      R 20/R 40 from District of _____

**Defendant Information:**

**Defendant**    Juan Jose Rodriguez                        Juvenile  ☐ Yes   ☒ No

**Alias Name** _____

**Address**   43 Frederick Street, Framingham, MA

**Birth**  5/20/74   **SS#:** _____   **Sex:** M   **Race:** Hispanic   **Nationality** Dominican

**Defense Counsel if known:** _____           **Address:** _____

**Bar Number:** _____

**U.S. Attorney Information:**

**AUSA**   William Bloomer                  **Bar Number if applicable** _____

**Interpreter:**  ☒ Yes   ☐ No      List language and/or dialect: _____

**Matter to be SEALED:**  ☐ Yes  ☒ No

    ☐ Warrant Requested          ☐ Regular Process         ☒ In Custody

**Location Status:**

**Arrest Date:**  2/25/05

☒ Already in Federal Custody as   2/25/05           in _____ .
☐ Already in State Custody _____       ☐ Serving Sentence    ☐ Awaiting Trial
☐ On Pretrial Release:  Ordered by _____    on _____

**Charging Document:**    ☒ Complaint    ☐ Information    ☐ Indictment

**Total # of Counts:**    ☐ Petty _____   ☐ Misdemeanor _____   ☒ Felony  1

                 Continue on Page 2 for Entry of U.S.C. Citations

☒   I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
    accurately set forth above.

**Date:**  February 25, 2005        **Signature of AUSA:** _____

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy) _____

**Name of Defendant**   Juan Jose Rodriguez

**U.S.C. Citations**

| | Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|---|
| Set 1 | 21 USC §952 & 960 | Illegal importation of Cocaine | |
| Set 2 | | | |
| Set 3 | | | |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set | | | |
| Set | | | |
| Set | | | |
| Set | | | |
| Set | | | |
| Set | | | |

**ADDITIONAL INFORMATION:** _____

omar gonzalez js45.wpd - 3/13/02